NOT FOR PUBLICATION

| UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY | |
|---|---|
| Caption in Compliance with D.N.J. LBR 9004-2(c) | |
| | |
| IN RE: XEUHAI LI,<br>           Debtor. | Case No. 20-14367 (MBK)<br><br>Adv. No. 20-1389 (MBK) |
| GIANTSEA NEW ENERGY TECHNOLOGY CO., LTD.<br>           Plaintiff,<br><br>vs.<br><br>LI et al.,<br>           Defendants. | Chapter 11<br><br>Hearing Date:  9/10/2020<br><br>Judge:   Michael B. Kaplan |

**Andrea Dobin**
**Michael A. Siravo IV**
McManimon, Scotland & Baumann, LLC
427 Riverview Plaza
Trenton, NJ 08611
*Chapter 11 Trustee,*
*Attorneys for Andrea Dobin*

**Andreas D. Milliaressis**
**Leonard P. Goldberger**
Stevens & Lee, P.C.
Princeton Pike Corporate Center
100 Lenox Drive, Suite 200
Lawrenceville, NJ 08648
*Attorneys for Giantsea New Energy Technology Co., Ltd.*

**Nicole M. Nigrelli**
Ciardi & Ciardi & Astin, P.C.
One Commerce Square
2005 Market Street, Ste. 3500
Philadelphia, PA 19103
*Attorney for Debtor, Xeuhai Li*

**Seth D. Josephson**
196 Princeton-Hightstown Road,
Princeton Junction, NJ 08550
*Attorney for Yun Zhang*

**MEMORANDUM OPINION GRANTING CHAPTER 11 TRUSTEE'S MOTION FOR ENTRY OF AN ORDER SEEKING DISMISSAL OF THE AMENDED COMPLAINT**

This matter comes before the Court on a motion (ECF No. 10) filed by the Chapter 11 Trustee, Andrea Dobin ("Trustee") in the above-captioned adversary proceeding, seeking dismissal of the amended complaint ("Amended Complaint"), filed by Giantsea New Energy Technology Co., Ltd. ("Plaintiff"), and the imposition of a constructive trust as to property located at 485 Princeton-Kingston Road, Princeton, NJ 08540 and 487 Princeton-Kingston Road, Princeton, NJ 08540 (collectively, the "Property," or "Princeton Property"), or in the alternative, a declaration that Plaintiff should be deemed to hold a first priority lien and security interest superior to the interests of all named defendants. (ECF No. 4) Plaintiff filed opposition (ECF No. 12), and Yun Zhang, a creditor and the former spouse ("Ex-spouse") of the Debtor, filed a response to Trustee's motion (ECF No. 14). Trustee filed a response. (ECF No. 15)

The Court has reviewed all the submissions, considered the arguments made during the hearing on September 10, 2020, and has reviewed the supplemental letters submitted by Counsel on September 14, 2020 through September 16, 2020. For the reasons set forth below, Trustee's motion for dismissal is GRANTED, with prejudice.

**I.    Background**

The facts of this case are well known to the parties and the Court, and therefore need not be repeated in great detail here. Defendant, Xuehai Li ("Debtor"), filed a voluntary petition for relief under chapter 11 of the United States Bankruptcy Code on March 13, 2020 (No. 20-14367-MBK). On July 15, 2020, Andrea Dobin was appointed as the Chapter 11 Trustee for Debtor's bankruptcy case. On July 24, 2020, Plaintiff filed the Amended Complaint (the "Amended Complaint"), adding Trustee as a defendant.

The Amended Complaint asserts that pursuant to a loan agreement dated December 4, 2013 ("Loan Agreement"), Plaintiff loaned Debtor a total of $2,235,000 ("Loan"). Plaintiff, Giantsea, is a privately-owned company in the People's Republic of China. Giantsea's majority shareholder is Qunbo Li, the father of Debtor. Qunbo Li holds more than two-thirds of Giantsea's outstanding shares and is the chairman of the board. Debtor is a minority shareholder and an executive of Giantsea. Pursuant to the Loan Agreement, Plaintiff was to be secured by a recorded mortgage against any real estate collateral purchased with the proceeds of the Loan, and the Loan was to be repaid on or before January 2, 2017. (ECF No. 96-2, Case No. 20-14367) On January 6, 2014, Debtor allegedly[1] used the funds from the Loan to purchase the Princeton Property, which was then titled in Debtor's name and the Ex-spouse's name. A mortgage in favor of Plaintiff against the Property was not recorded at this time.

Debtor allegedly failed to timely repay the Loan to Plaintiff, and consequently, Plaintiff initiated an action for Breach of the Loan Agreement and Unjust Enrichment in New Jersey Superior Court for Mercer County in August of 2015 captioned *Giantsea Instrument and Equipment Company, Limited v. Xuehai Li*, Docket No. MER-L-1855-15 (the "State Court Action"). On March 15, 2016, the state court entered a default judgment in favor of Plaintiff in the amount of $2,268,065.76, plus interest and other charges. On December 22, 2016, Plaintiff and Debtor entered into an agreement to extend the loan repayment, extending the due date for repayment to January 2, 2019. On May 29, 2018, Debtor executed a mortgage ("Mortgage") against the Property in favor of Plaintiff and back-dated the mortgage to December 4, 2013. The Ex-spouse asserts that she did not execute the Mortgage. The Debtor recorded the mortgage the

---

[1] While a disputed issue of fact remains as to whether such funds were used for the purchase of the Property, resolution of this dispute has no bearing on the Court's determination of this motion.

following day. Debtor failed to make any payments towards the Loan, and thereafter, on March 13, 2020, filed for relief under chapter 11 of the Bankruptcy Code.

On July 1, 2020, post-petition, Plaintiff filed a complaint against Debtor, the Ex-Spouse, and others. The complaint was subsequently amended on July 24, 2020 to add the Trustee as a defendant. In the Amended Complaint, Plaintiff wishes to determine its interest in the Property for purposes of classification and treatment of creditors for any proposed plan of reorganization. Plaintiff asserts that because the Property was purchased with Plaintiff's funds, it is held in a constructive trust for Plaintiff's benefit, notwithstanding the fact that title is in the names of Debtor and his Ex-spouse. In the alternative, Plaintiff asserts it is entitled to a first priority lien and security interest that is superior to all named defendants in the Amended Complaint.

## II.    Trustee's Motion to Dismiss

As set forth above, Trustee has filed a motion seeking dismissal of the Amended Complaint in its entirety as authorized by FED. R. CIV. P. 12(b)(6) and FED. R. BANKR. P. 7012. Pursuant to FED. R. CIV. P. 12(b)(6), made applicable to this proceeding by FED. R. BANKR. P. 7012(b), a party may move to dismiss a complaint for failure to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6); FED. R. BANKR. P. 7012(b). When considering a Rule 12(b)(6) motion, the reviewing court must accept all of the factual allegations contained within the complaint as true. *U.S. v. Gaubert,* 499 U.S. 315, 327, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991). In addition, all reasonable inferences should be drawn in favor of the plaintiff. *Gary v. Air Group, Inc.,* 397 F.3d 183, 186 (3d Cir.2005). As the Supreme Court of the United States explained in *Bell Atlantic Corp. v. Twombly:*

> Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's

4

> obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level....

550 U.S. 544, 127 S.Ct. 1955, 1964–65, 167 L.Ed.2d 929 (2007) (internal citations omitted). Ultimately, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974.

In a ruling on a Rule 12(b)(6) motion to dismiss, a court is very limited in terms of what may be considered from an evidentiary standpoint. Under Rule 12(b)(6), "pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss." *Fowler v. UPMC Shadyside,* 578 F.3d 203, 210 (3d Cir.2009). Given this narrow scope, a court hearing a Rule 12(b)(6) motion will "generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Ben. Guar. Corp. v. White Consol. Industries,* 998 F.2d 1192, 1196 (3d Cir.1993). In addition, "a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1426 (3d Cir.1997).

### III.    Entire Controversy Doctrine

This Court is concerned primarily about the applicability of the entire controversy doctrine to the claims of the Adversary Complaint. Although the parties have not raised this argument, the Court finds an analysis of the doctrine's applicability to be critical for its ruling and has requested the parties to brief whether the entire controversy doctrine bears on this present dispute.

"The entire controversy doctrine is a creature of New Jersey case law, which states that 'a party cannot withhold part of a controversy for separate later litigation[,] even when the withheld

5

component is a separate and independently cognizable cause of action.'" *In re Popular Club Plan, Inc.*, 395 B.R. 587, 593 (Bankr. D.N.J. 2008) (quoting *Paramount Aviation Corp. v. Agusta,* 178 F.3d 132, 137 (3rd Cir.1999)). As described in *Ricketti v. Barry*, the entire controversy doctrine is New Jersey's application of res judicata, and is considered an affirmative defense to be applied in federal courts "when there was a previous state-court action involving the same transaction." *See Ricketti v. Barry*, 775 F.3d 611, 613 (3d Cir. 2015) (quoting *Bennun v. Rutgers State Univ.,* 941 F.2d 154, 163 (3d Cir.1991)). When considering the reasoning for such a policy, the Court looks to the New Jersey Supreme Court for clarity—

> Judicial economy and efficiency—the avoidance of waste and delay—remain constants in the application of the entire controversy doctrine. Fragmented and multiple litigation takes its toll on not only the parties but the judicial institution and the public. This, if anything, is a more pressing concern today than it was in the past. The litigation explosion stretches judicial capabilities enormously and places extraordinary demands on the courts. These concerns have impelled the Court to pursue novel and creative measures to cope with the increase in caseloads. We are importuned to conserve judicial resources; judicial energy is not inexhaustible or endlessly renewable. Thus, a rule that can control litigational extravagance and reduce piecemeal litigation is a necessity.

*Cogdell by Cogdell v. Hosp. Ctr. at Orange*, 116 N.J. 7, 23–24, 560 A.2d 1169, 1177 (1989).

"The entire controversy doctrine stems directly from the principles underlying the doctrine of res judicata or claim preclusion. However, [t]he doctrine is a broad one, more preclusive than both res judicata and the Restatement [(Second) of Judgments]." *Bank Leumi USA, v. Kloss*, 243 N.J. 218, 227, 233 A.3d 536, 540–41 (2020) (internal citations and quotations omitted); (quoting *Prevratil v. Mohr*, 145 N.J. 180, 187, 678 A.2d 243 (1996); *Kozyra v. Allen*, 973 F.2d 1110, 1111 (3d Cir. 1992)). The *Codgell* decision was codified by New Jersey Rule of Court 4:30A, which was later amended in September 1998 after review by the Civil Practice Committee at the New Jersey Supreme Court's direction. *Ricketti* 775 F.3d at 614; *see also Kent Motor Cars, Inc. v. Reynolds & Reynolds, Co.,* 207 N.J. 428, 25 A.3d 1027, 1035–36 (2011); *Paramount Aviation*

*Corp. v. Agusta,* 178 F.3d 132, 135 n. 1 (3d Cir.1999). As a result of the further review, all language concerning party joinder was dropped, and moved to Rule 4:5-1(b)(2), which provides:

> [E]ach party shall disclose ... the names of any non-party who should be joined in the action ... because of potential liability to any party on the basis of the same transactional facts.... If a party fails to comply with its obligations under this rule, the court may impose an appropriate sanction including dismissal of a successive action against a party whose existence was not disclosed or the imposition on the noncomplying party of litigation expenses that could have been avoided by compliance with this rule. A successive action shall not, however, be dismissed for failure of compliance with this rule unless the failure of compliance was inexcusable and the right of the undisclosed party to defend the successive action has been substantially prejudiced by not having been identified in the prior action.

N.J. Ct. R. 4:5-1(b)(2). *See Ricketti* 775 F.3d at 614. Today, when considering applicability of the entire controversy doctrine, the Court must be guided by Rule 4:30A when claim joinder has been invoked, and Rule 4:5-1(b)(2) when discussing party joinder.

### A. Party Joinder

This Court will first consider an analysis of party joinder under Rule 4:5-1(b)(2), which provides the following—

> [E]ach party shall disclose ... the names of any non-party who should be joined in the action ... because of potential liability to any party on the basis of the same transactional facts.... If a party fails to comply with its obligations under this rule, the court may impose an appropriate sanction including dismissal of a successive action against a party whose existence was not disclosed or the imposition on the noncomplying party of litigation expenses that could have been avoided by compliance with this rule. A successive action shall not, however, be dismissed for failure of compliance with this rule unless the failure of compliance was inexcusable and the right of the undisclosed party to defend the successive action has been substantially prejudiced by not having been identified in the prior action.

N.J. Ct. R. 4:5-1(b)(2).

The State Court Action was brought in 2015 and focused on two counts, including Breach of Contract and Unjust Enrichment. Plaintiff only joined Debtor as a defendant, despite the Ex-spouse

having a clear marital interest in the Princeton property. Giantsea was successful in obtaining a default judgment against the Debtor in 2016, and then refused to take action until the matrimonial matter was finalized because it wanted the Ex-spouse's interest to be determined first. It is palpably clear that Debtor and Giantsea were aware that any claims against the Ex-spouse were fully known and had accrued when the State Court Action was filed in 2015. Plaintiff attempts to bring these same claims against the Ex-spouse by contending that she (1) will be unjustly enriched if she were permitted to not pay back the Loan, (2) agreed that the Princeton Property would be security for the alleged loan, and (3) under quantum meruit, received the benefit of the alleged Loan and because of this, the Property should be placed in a constructive trust held by Plaintiff. This Courts finds that there is no justification for not bringing in the Ex-spouse as a party when all claims under the Loan Agreement were to be litigated in the State Court Action.

### B. Joinder of Claims

This Court now turns its attention to claim preclusion, as it is applied through the entire controversy doctrine. Rule 4:30(A) provides in relevant part that "[n]on-joinder of claims required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims to the extent required by the entire controversy doctrine." N.J. Ct. R. 4:30A. While Rule 4:30A fails to provide guidance as to which claims must be necessarily joined under the entire controversy doctrine, it does suggest that such claims must arise from related facts or transaction(s), but they need not necessarily be bound by the same legal theories. *See Bank Leumi USA* 243 N.J. at 233.

In determining whether Plaintiff's claims should be precluded, this Court looks to New Jersey preclusion law, as the state court judgment was entered in New Jersey. *See Watkins v. Resorts Int'l Hotel & Casino, Inc.,* 124 N.J. 398, 411, 591 A.2d 592, 598 (1991) (citing

8

Restatement (Second) of Conflict of Laws, § 95 cmt. e (1971)). Claim preclusion will act as a bar to suit if the following apply—

> (1) the judgment in the first action is valid, final and on the merits; (2) the parties in both actions are the same or are in privity with each other; and (3) the claims in the second action must arise from the same transaction or occurrence as the claims in the first one. In addition, res judicata bars not only claims that were brought in the first action, but also claims that should have been brought as well.

*Sibert v. Phelan*, 901 F. Supp. 183, 186 (D.N.J. 1995) (internal citations omitted). This logic applies to default judgments as well. A default judgment is a final judgment that would bar all further litigation of the action. *In re Crispino*, 160 B.R. 749, 755 (Bankr. D.N.J. 1993); *See e.g., Evangel Baptist Church v. Chambers,* 96 N.J.Super. 367, 370–71, 233 A.2d 82 (Ch.Div.1967) ("I have found no authority indicating that a default judgment, properly entered, has any less binding effect upon possible future interests in land than a judgment entered in a contested matter."). This is assuming that the issues were fairly litigated in the previous proceeding. *Id.*

Debtor was the primary defendant in the State Court Action with Plaintiff, and presently, the Debtor (as well as the bankruptcy estate) is the primary defendant in this adversary proceeding. The Amended Complaint is comprised of claims that arise from the same facts and relate to the same Loan Agreement that was litigated in the State Court Action. After Debtor's failure to answer the complaint in the State Court Action, Plaintiff was awarded a default money judgment, which this Court considers final. Presently, Plaintiff seeks a declaration that the Property was held in constructive trust for its benefit, or in the alternative, that Plaintiff is entitled to a first priority lien and security interest that is superior to all named defendants.

The Court sees these requests for equitable relief as state law constructs that could have been brought in the State Court Action. The Court need not rely on extrinsic evidence to come to this determination. As there is a final judgment entered in the State Court Action arising from the same facts and issues related to the Loan Agreement that is bottomed on the same facts and

9

transaction of issue in this adversary proceeding, and because Plaintiff failed to assert any rights to equitable remedies in the state court, this Court finds that Plaintiff is barred by claim preclusion, and the entire controversy doctrine, from further litigating these claims in this bankruptcy.

This dispute, however, does raise several additional interesting issues upon which this Court feels compelled to comment.

### IV.    Constructive Trusts and Debtor's Right to Redemption

Plaintiff seeks a declaratory judgment that the Princeton Property is held in constructive trust for the benefit of Plaintiff in consideration of the Loan. This Court must first determine whether such an equitable remedy is appropriate.

In *Flanigan v. Munson*, the Supreme Court of New Jersey discusses the purpose of constructive trusts in the acquisition of property, and clarifies that "the wrongful act must result in a transfer or diversion of property that unjustly enriches the recipient." *Flanigan v. Munson*, 175 N.J. 597, 608 A.2d 1275, 1281 (2003). Courts apply a two-part test to determine whether the implementation of a constructive trust is warranted. *Flanigan* 175 N.J. 597 at 608. First, a court must find that a "wrongful act" was committed by a party. Specifically, the act need not be fraudulent, but may be an innocent mistake, to result in a constructive trust. Second, "the wrongful act must result in a transfer or diversion of property that unjustly enriches the recipient." *Flanigan* 175 N.J. 597 at 608 (citing *D'Ippolito v. Castoro,* 51 *N.J.* 584, 589, 242 *A.*2d 617 (1968)); *see also In re Giberson,* 260 B.R. 78, 81 (Bankr. D.N.J. 2001) (asserting that a "a constructive trust can be imposed where property has been transferred by a wrongful act including fraud, mistake or undue influence or where property has not been wrongfully acquired but retention would result in unjust enrichment.") Bankruptcy courts are reluctant to impose constructive trusts, however, as they may substantially alter the priority system. *See In re Haber Oil.*, 12 F.3d 426, 436 (5th Cir.1994).

10

Should a claimant be granted a constructive trust, that claimant is essentially given priority over other unsecured creditors.

This Court has concerns that the imposition of a constructive trust would impair the Debtor's right to redemption. "The right of redemption arises by statute N.J.S.A. 2A:50–16 et seq., by rule 4:65–5,6 and by equity." *In re Mocco,* 176 B.R. 335, 345 (Bankr. D.N.J. 1995).

> Under New Jersey law every mortgagor is possessed of an "Equity of Redemption" which stems from the mortgage itself and the common law. Pursuant to the right aforesaid, the mortgagor is cloaked with the authority, subsequent to default, but prior to a judgment of foreclosure, to perform his obligation under the mortgage and have title to his property restored free and clear of the mortgage obligation.

*Matter of Martinez*, 73 B.R. 300, 302 (Bankr. D.N.J. 1987) (citing G. Nelson and D. Whitman, *Real Estate Finance Law* § 7.1 (2d ed. 1985)). There is extensive history in New Jersey stating that the equity of redemption is a right that cannot so easily be extinguished. "The right to redeem is a favorite equity and will not be taken away except upon a strict compliance with the steps necessary to divest it." *Mansfield v. Hammond*, 117 N.J. Eq. 509, 510, 176 A. 354, 354 (1935). Such a favored right "may not be released in the mortgage itself or in a contemporaneous agreement." *Hardyston Nat. Bank of Hamburg, N. J. v. Tartamella*, 56 N.J. 508, 513, 267 A.2d 495, 497–98 (1970); *see also Dorman v. Fisher*, 31 N.J. 13, 15, 155 A.2d 11 (1959). Under current New Jersey law, a mortgagor is permitted to redeem within a ten-day period after a foreclosure auction, as provided in Rule 4:65-5. Until the equity of redemption is extinguished, a debtor still retains interest in the property. *See* N.J. Ct. R. 4:65-5.

Ultimately, this Court is not in favor of applying a constructive trust to the facts herein. Constructive trusts primarily deal with the transfer or diversion of property, and the only "property" a trust could possibly attach to in the case at bar is the transferred money between Plaintiff and Debtor. Although Debtor's failure to file a valid mortgage in favor of Giantsea

pursuant to the Loan Agreement may translate to a wrongful act, resulting in the Debtor being unjustly enriched, this Court is more concerned about the impact a constructive trust would have on Debtor's right to redemption. In granting the relief sought by Plaintiff, a constructive trust over the Property, the Court would be denying the Debtor (and the bankruptcy estate) the right to redeem the Property. New Jersey's extensive history suggests that this favored equitable right cannot be eliminated through the imposition of a constructive trust.

### V.    Express Contracts and Plaintiff's Requests for Equitable Relief

Plaintiff posits that Debtor and the Ex-spouse were unjustly enriched at the time the Property was acquired because (1) Debtor and the Ex-Spouse used no other funds to secure the Property, (2) no other valuable consideration was provided in connection with the obligation to repay the loan, and (3) the mortgage in favor of Plaintiff was not recorded at the time of purchase. Therefore, Plaintiff asserts it is entitled to a first priority lien and security interest against the Property. Yet, authorities are clear that a claim for unjust enrichment will be dismissed if the complaint alleges an express, enforceable contract that controls the parties' relationship. *See Van Orman v. Am. Ins. Co.,* 680 F.2d 301, 310 (3d Cir.1982) (applying New Jersey law); *Rossdeutscher v. Viacom, Inc.,* 768 A.2d 8, 23–24 (Del.2001) (applying New York law); *ID Biomedical Corp. v. TM Tech., Inc.,* 1995 WL 130743, at *15 (Del.Ch. Mar.16, 1995) (applying Delaware law). This is because unjust enrichment is an equitable remedy that is generally used to fill a gap that the law of contract would otherwise address, if there were a contract. *See Freedman v. Beneficial Corp.,* 406 F.Supp. 917, 923 (D.Del.1975). Should the moving party look to recover under an unjust enrichment theory, notwithstanding the existence of an express contract, including a lending agreement, the court will consider whether the agreement and underlying enforceability of the express contract is being challenged in the complaint. *See In re Fedders N. Am., Inc.*, 405 B.R.

527, 552 (Bankr. D. Del. 2009). In New Jersey, "there must be a rescission of an express contract before the parties will be permitted to proceed with a claim for [q]uantum meruit. The only conflict between pleading and proving an express contract and [q]uantum meruit simultaneously occurs in the absence of a rescission." *Power–Matics, Inc. v. Ligotti,* 79 N.J.Super. 294, 305, 191 A.2d 483 (App.Div.1963) (citing *Moser v. Milner Hotels, Inc.,* 6 N.J. 278, 280–281, 78 A.2d 393 (1951); *C.B. Snyder Realty Co. v. Nat., Inc., Banking Co.,* 14 N.J. 146, 162–163, 101 A.2d 544 (1952)).

This Court rules that Plaintiff's claims for equitable relief cannot be enforced since an express contract, the Loan Agreement, exists. Equitable remedies must take a backseat to the contract. As discussed, Plaintiff previously opted to pursue a judgment for breach of the Loan Agreement, and indeed secured a default judgment. There is no reason to afford equitable relief at this juncture.

## VI.    Conclusion

For the foregoing reasons, the Court finds that the entire controversy doctrine applies to Plaintiff's claims for equitable relief in the Amended Complaint. The Trustee's Motion to Dismiss (ECF No. 10) shall be granted. The Court will enter an Order granting the Trustee's motion and terminating the adversary proceeding.

*[signature]*

Michael B. Kaplan, Chief Judge
U.S. Bankruptcy Court
District of New Jersey

Dated: October 2, 2020